# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Larry Edwards,
    Petitioner


    vs                              Case No. C-1-01-218
                                     (Beckwith, J.; Novotny, M.J.)


Anthony Brigano,
    Respondent

---

## REPORT AND RECOMMENDATION

---


    Petitioner, an inmate in state custody at the Warren Correctional Institution in Lebanon, Ohio, brings this action with the assistance of counsel for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition, as amended,  respondent's return of writ, as amended, and petitioner's response. (Docs. 1, 3, 7, 10, 13).


### Procedural Background

    The 1998 term of the Hamilton County, Ohio grand jury indicted petitioner for one count of aggravated robbery as defined in Ohio Rev. Code § 2911.01(A)(1) with specifications, two counts of robbery as defined in Ohio Rev. Code § 2911.02(A)(2), with specifications; one count of felonious assault as defined in Ohio Rev. Code § 2903.11(A)(2) with specifications; two counts of kidnapping as defined in Ohio Rev. Code § 2905.01(A)(2) with specifications and one count of having weapons while

under disability as defined in Ohio Rev. Code § 2923.13(A)(3). (Doc. 10, Ex. 1). On February 3, 1999, a jury found petitioner guilty of all charges and specifications. (Doc. 10, Ex. 3). For sentencing purposes, the Court merged the two robbery counts with the aggravated robbery count. (Doc. 10, Ex. 4). On February 10, 1999, the court sentenced petitioner to consecutive terms of seven years on the aggravated robbery charge with three years for the specification, four years for the felonious assault charge, four years for each of the kidnapping charges, and to a concurrent term of six months for having weapons while under disability. (*Id.*, Ex. 4).

Petitioner, assisted by a newly appointed counsel, filed an appeal to the Ohio Court of Appeals, First Appellate District, raising the following assignments of error:

1.  The trial court erred in admitting the identification evidence of Appellant by the State which was violative of Due Process.

2.  The conviction was against the manifest weight of the evidence and should be reversed.

(Doc. 10, Ex. 10).

On December 22, 1999, the Ohio Court of Appeals issued a decision overruling the assignments of error and affirming the judgment of the trial court. (*Id.*, Ex. 12). Through the same appellate counsel, petitioner further appealed his conviction to the Ohio Supreme Court, raising the same claims he had presented to the Ohio Court of Appeals. (*Id.,* Ex. 13). On April 19, 2000, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving "any substantial constitutional question." (*Id.,* Ex. 15).

On June 21, 2001, petitioner, through new counsel, filed an application to reopen his appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure, claiming that his appellate counsel was ineffective. (Doc. 10, Ex. 16). Petitioner argued that his appellate counsel was ineffective for failing to raise the following claims:

1.  The trial court erred to the prejudice of the Appellant's right to a fair trial secured to him by the due process clause of the Fourteenth Amendment and by Art. I § 16 of the Ohio Constitution, as well as the Sixth Amendment right of confrontation and Art. I § 10 of the Ohio

Constitution, by admitting hearsay evidence of a "crime wave" in which several robberies throughout the county had been perpetrated by several young black men in a small white automobile similar to the automobile that a state witness testified had been occupied by appellant at the time and place of the offenses of which appellant has been convicted.

2. The trial court erred in overruling a defense objection to the exercise by the state of a peremptory challenge to a jury as being based on the race of the juror, in violation of the equal protection clause to the Fourteenth Amendment to the U.S. Constitution, and the Ohio Constitution.

3. The trial court erred to the prejudice of Defendant-Appellant by entering judgments of conviction after a trial in which Appellant was denied his right to the effective assistance of counsel, in that his counsel failed to object or move for mistrial when inadmissible other act evidence was brought before the jury, and counsel himself pointed out to the jury that Appellant was in custody during his trial, in violation of the rights of the U.S. Constitution, the Due Process Clause of the Fourteenth Amendment, and Art. I §§ 10 and 16 of the Ohio Constitution.

4. The trial court erred in imposing separate convictions for kidnapping, and aggravated robbery, in that the kidnapping were allied offenses of similar import of the aggravated robbery charges, in violation of Appellant's Fourteenth Amendment right to due process, his Eighth Amendment right against suffering cruel and unusual punishments and their Ohio Constitutional counterparts, and his Fifth Amendment right against Double Jeopardy.

(Doc. 10, Ex. 16).

On August 7, 2001, the Ohio Court of Appeals denied petitioner's application as untimely, finding that there was no good cause for the delay in filing. (*Id.,* Ex. 18).

On September 14, 2001, petitioner, through counsel, appealed the decision to the Ohio Supreme Court, raising the following propositions of law:

3

1.  Where an appellant in a criminal case is represented in his appeal to the Supreme Court of Ohio by the same counsel who represented him in his unsuccessful appeal to the Court of Appeal, and the Supreme Court of Ohio denied leave to appeal more than ninety days after the journalization of the judgment of the Court of Appeals, good cause is shown for failing to file an application to reopen appeal under App.R. 26(B), and it is a denial of the right to due process of law under the Fourteenth Amendment to the U.S. Constitution, and Art. I. § 16 of the Ohio Constitution, for the Court of Appeals to deny the application to reopen as untimely.

2. The failure of appellate counsel to file an application to reopen appeal under App. R. 26(B) amounts to ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution, and constitutes good cause for untimely filing of the application beyond the time required by the rule for filing such an application, and the ignorance of the law on the part of the client cannot vitiate his right to effective counsel.

3.  Where an appellant can demonstrate good cause for failing to file an application to reopen appeal within the ninety days required by App. R. 26(B), the length of time between the expiration of the ninety day requirement and the actual filing of the application to reopen is not a factor to consider in determining whether the application is timely.

(Doc. 10, Ex. 19).  On November 21, 2001, the Ohio Supreme Court dismissed the appeal because it did not involve any substantial constitutional question.  (Doc. 10 Ex. 21).

Petitioner filed the instant petition for a writ of habeas corpus raising the following grounds for relief which are quoted verbatim:

**Ground one**: Conviction violated due process under Fourteenth Amendment through use of identification evidence improperly suggested by police.

Supporting facts: Police used a photo "lineup" consisting of 66 photos, of which Petitioner's picture was the very first of the 66; police then

4

showed the witnesses a large photo of the Petitioner only. Under the totality of the circumstances, the identification evidence was constitutionally unreliable.

**Ground two**: Ineffective assistance of appellate counsel under Sixth and Fourteenth Amendments.

Supporting facts: Appellate counsel failed to raise several substantial constitutional violations in Petitioner's direct appeals.

**Ground three**: Deprivation of the due process right to a fair trial under the Fourteenth Amendment.

Supporting facts: Trial court admitted hearsay evidence of a crime wave in which several robberies had been committed by several young black males in an auto similar to that seen by a witness who identified Petitioner in such an automobile. Such evidence constituted prohibited other act evidence.

**Ground four**: Violation of the Sixth Amendment right to confrontation in that the evidence of the "crime wave" was through hearsay evidence.

Supporting facts: The evidence of the "crime wave" was presented through hearsay evidence by a police officer, and Petitioner's counsel was prevented from cross examining the declarant.

**Ground five**: Denial of Petitioner's Fourteenth Amendment right to equal protection of the laws.

Supporting Facts: The trial court overruled a defense objection to the exercise by the state of a peremptory challenge based upon the race of the prospective juror.

**Ground six**: Denial of Petitioner's Sixth Amendment right to the effective assistance of counsel.

Supporting facts: Defense counsel failed to object or move for mistrial when inadmissible other acts evidence was admitted before Petitioner's

5

jury; Defense counsel himself pointed out to the jury that Petitioner was attired in jail clothing (and thus in custody) during trial.

**Ground seven:** Violations of Petitioner's right to due process under the Fourteenth Amendment, to be free from cruel and unusual punishment under the Eighth Amendment, and to be protected against multiple punishments for the same offense, under the double jeopardy clause of the Fifth Amendment.

Supporting facts: The trial court imposed separate convictions for kidnapping and aggravated robbery, in that the two offenses were allied offenses of similar import, committed with a single animus. Under Ohio law, while one may be charged with both offenses, he may be convicted of only one, R.C. 2941.25.

(Doc. 7). In his return of writ, respondent asserts that petitioner's first ground for relief lacks merit and that the remaining grounds have been procedurally defaulted in the state courts and are therefore waived for habeas corpus review. Alternatively, respondent asserts that grounds three through seven are either non-cognizable on habeas corpus review or are lacking in merit. (Doc. 10).

## OPINION

### I. Petitioner is not entitled to habeas corpus relief with respect to ground one of the petition challenging the pretrial identification of petitioner as unconstitutional.

As his first ground for relief, petitioner challenges the pretrial identification procedure as unduly suggestive and unreliable, thereby violating petitioner's right to due process.

A conviction based on identification testimony following pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Thigpen v. Cory,* 804 F.2d 893, 895 (6th Cir. 1986), *cert. denied,* 482 U.S. 918 (1987) (quoting *Simmons v. United States,* 390 U.S. 377, 384 (1968)); *see also Ledbetter v. Edwards,* 35 F.3d 1062, 1070 (6th Cir. 1994), *cert. denied,* 515 U.S. 1145 (1995). It is the likelihood of

misidentification that violates the defendant's due process right. *Neil v. Biggers,* 409 U.S. 188, 198 (1972). The due process standard is premised on the concern that the trustworthiness of an eyewitness's identification can be easily undermined by improper police suggestion in circumstances where there already is a danger of misidentification because the witness is called upon to identify a stranger observed only briefly, under poor conditions, at a time of extreme emotional stress and excitement. *See Manson v. Brathwaite,* 432 U.S. 98, 112 (1977); *Simmons,* 390 U.S. at 383-84; *United States v. Russell,* 532 F.2d 1063, 1066 (6th Cir. 1976); *see also Ledbetter,* 35 F.3d at 1070. Therefore, the determination whether the eyewitness's identification testimony is admissible at trial turns on the reliability of that testimony. *Manson,* 432 U.S. at 114; *see also Summitt v. Bordenkircher,* 608 F.2d 247, 251 (6th Cir. 1979), *aff'd sub nom. Watkins v. Sowders,* 449 U.S. 341 (1981).

A two-step analysis is utilized in deciding whether the accused's right to due process has been violated through the use of a pretrial identification procedure. The court must first consider whether the procedure was unduly suggestive. *Ledbetter,* 35 F.3d at 1070-71 (citing *Thigpen,* 804 F.2d at 895). The defendant bears the burden of proving this element. *Id.* at 1071 (citing *United States v. Hill,* 967 F.2d 226, 230 (6th Cir.), *cert. denied,* 506 U.S. 964 (1992)). If the court finds that the procedure was unduly suggestive, it must next evaluate the "totality of the circumstances" to determine whether the identification was nevertheless reliable. *Id.*; *see also Neil,* 409 U.S. at 199-200. The factors to be considered in assessing the reliability of the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when identifying the defendant; and (5) the length of time between the crime and the identification. *Manson,* 432 U.S. at 114; *Neil,* 409 U.S. at 199-200; *United States v. Gatewood,* 184 F.3d 550, 556 (6th Cir. 1999); *Ledbetter,* 35 F.3d at 1071.

Under the standard established by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254 (d), petitioner is not entitled to federal habeas corpus relief, unless the state court's adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001);

*Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998). A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.). Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

Citing the Supreme Court cases of *Neil*, 409 U.S. 188, and *Manson*, 432 U.S. 98, the Ohio Court of Appeals concluded that the identification procedures were not impermissibly suggestive and that the identifications were sufficiently reliable. (Doc. 10, Ex. 12).

The robbery at issue here occurred on June 30, 1998 at 12:30 a.m. at the Red Lobster restaurant on Glenway Avenue. On that day, just before the robbery, employee Timothy Baarlaer was leaving after his shift and walking out to the parking lot when he noticed a white car circling the restaurant containing four black males. (Tr. 123,

125).[1] The car hesitated which made him notice it. (Tr. 123). Mr. Baarlaer saw the face of the man in the front passenger seat within approximately 15 feet and for five or six seconds. (Tr. 123-124). Mr. Baarlaer described the man as wearing a heavy sweatshirt or jacket, having a narrow face and between the ages of 18 and 26. (Tr. 124, 134). About one to one and one-half months later, the police showed Mr. Baalaer a photographic array of approximately eleven pages with sixty-six pictures. (Tr. 129). This array was comprised by a police task force investigating a rash of robberies in the greater Cincinnati area. (Tr. 208). Mr. Baalaer paged through the entire array one and one-half times.  (Tr. 129). Within three or four minutes, Mr. Baalaer identified petitioner who was depicted in the very first picture on the top left corner as the individual he saw in the car prior to the robbery. (Tr. 130, 212). On cross examination, he conceded that there was another man on the bottom of page six who was a possibility. (Tr. 137).  He explained that he was ninety to ninety-five percent certain of his identification initially, but when the police later showed him a larger picture of petitioner, he was definite.  (Tr. 139; 130-131, 213). Mr. Baalaer identified the petitioner in the courtroom as the man he saw in the car upon exiting the Red Lobster restaurant. (Tr. 126).

Ms. Candace Johnson, the culinary manager, had closed the restaurant on the night in question and exited into the parking area along with one of the dishwashers, Daryl Smith. (Tr. 149-150). As soon as she got into her car, someone opened the door with a gun in his hand.  (Tr. 153).  Ms. Johnson described the man as black with a medium build and height wearing dark pants, a white shirt and a sweatshirt.  (Tr. 153). She testified that  his face was covered with a white tee shirt except his eyes and ears. (Tr. 153).  He motioned her and Mr. Smith back into the building and had her provide him with cash from the restaurant.  (Tr. 156, 160).  He also ordered Daryl to lie down and hit him in the head with his gun, when he attempted to get up.  (Tr. 159). Ms. Johnson testified that there was a second taller man involved who wore a white scarf around his face.  (Tr. 157). The police showed Ms. Johnson two different photograph arrays, but she did not make an identification. (Tr, 168-169).  Some six weeks to two months after the crime, the police showed her a new, more extensive eleven page photo array with better quality photographs generated by a police task force.  (Tr. 169, 208). She chose four possible photographs, then identified two of those as being the more likely, one of which was petitioner.  (Tr. 170-171, 209, 211). While viewing these pictures she covered the men's faces with paper so that she could only see their eyes.

---

[1]The trial transcript has been filed as document 16.

(Tr. 170). When the police provided her with an individual photograph of petitioner afterwards, she still could not make a definite pick although the separate picture did add to her certainty that petitioner was the perpetrator of the robbery. (Tr. 170, 173).

Daryl Smith did not identify the perpetrator of the robbery from the photographic array. (Tr. 193, 211). In court he testified that petitioner looked like the perpetrator. (Tr. 191).

Petitioner argues that the placement of his photograph as the first picture on the first page and the subsequent showing of a larger, individual photograph of the petitioner made the procedure unduly suggestive. Petitioner's photograph was not highlighted in any way in the photographic array. (*See* Doc. 10, Ex. 10, attachment). Someone's photograph has to be first, and in this case, it was petitioner's. Placement of a defendant's photograph in the first position in and of itself does not make the spread unduly suggestive. *See United States v. Bailey,* No. CRIM. 97-143, 1997 WL 379189, at *3 (E.D. Pa. June 30, 1997). In this case, the state's witnesses examined the entire photographic spread, page by page, before making a selection. (*See* Tr. 129, 170). The fact that Ms. Johnson picked out two likely photographs, one of which was on the fifth page, and that Mr. Baalaer also initially considered a photograph on the sixth page, supports the conclusion that positioning petitioner's photograph as the first one on the first page did not cause the array to be suggestive. Since the police showed these witnesses an enlarged photograph of petitioner only after they made the identification, that aspect of the identification process was also not suggestive. Even after seeing the individual photograph, Ms. Johnson was not swayed from her belief that the perpetrator was likely one of the two men she picked out from the array. She did not unequivocally identify the petitioner as the perpetrator after viewing the enlarged individual photograph of the petitioner, demonstrating further that showing the individual photograph was not suggestive.

Accordingly, petitioner has not demonstrated that the identification procedure was unduly suggestive. Assuming, arguendo, that he had, the identification was nevertheless reliable. Mr. Baalaer identified petitioner speedily and with a high degree of certainty. He paid attention to the face of the man in the car outside the Red Lobster immediately before the robbery because of the suspicious nature of the car's actions. These factors weigh heavily in favor of the reliability of the identification. Although Ms. Johnson's identification was not certain because she testified that the robber was one of two persons she saw in the array, it was sufficiently reliable because of the extensive contact she had with the robber. Since part of the perpetrator's face was

covered, Ms. Johnson's ability to identify petitioner unequivocally was compromised. Nevertheless, she provided the most reliable evidence of the perpetrator's identity that was available under these circumstances.

Upon review of the record, this Court concludes that the Ohio court's determination that the identification procedures were not impermissibly suggestive and the identifications were sufficiently reliable was based on a reasonable assessment of the facts in light of the record evidence and was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court in the *Neil* and *Manson* decisions. Accordingly, petitioner is not entitled to habeas corpus relief with respect to his first claim.

## II. Petitioner has waived his ineffective assistance of appellate counsel claim asserted as his second ground for relief due to a procedural default in state court.

As his second ground for relief, petitioner asserts that his appellate counsel rendered constitutionally ineffective assistance by failing to raise the issues asserted in grounds three through seven of his petition.

It is well-settled that, on federal habeas corpus review, a court may be barred from considering an issue of federal law from a judgment of a state court if the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Harris v. Reed,* 489 U.S. 255, 260-62 (1989). The "adequate and independent state ground" doctrine has been applied to state decisions refusing to address the merits of a federal claim because of violations of state procedural rules, including the failure to make a timely objection at trial. *Id.* at 261; *Wainwright v. Sykes,* 433 U.S. 72, 86-87 (1977); *see also McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985). An adequate and independent finding of procedural default will preclude habeas corpus review of the federal claim, unless the petitioner can show "cause" for the default and "prejudice" as a result of the alleged violation of federal law, or demonstrate that failure to consider the federal claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Harris,* 489 U.S. at 262.

A "fundamental miscarriage of justice" occurs only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 495-496 (1986); *see also Schlup*

*v. Delo,* 513 U.S. 298, 327 (1995). To be credible, such a claim "requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,* 513 U.S. at 324. In order to obtain habeas review of the merits of a procedurally-defaulted claim under the "actual innocence" exception, the otherwise-barred petitioner "must show it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, "including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Id.* at 327-28.

The rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the state courts is deemed adequate or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992), *cert. denied,* 507 U.S. 932 (1993). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n. 6 (1989); *see Scott v. Mitchell,* 209 F.3d 854, 868-870 (6th Cir.), *cert. denied,* 531 U.S. 1021 (2000); *Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000), *cert. denied,* 531 U.S. 1082 (2001). Furthermore, adequacy requires application of the rule "evenhandedly to all similar claims." *Hathorn v. Lovorn,* 457 U.S. 255, 263 (1982); *Maes v. Thomas,* 46 F.3d 979, 986 (10th Cir.), *cert. denied,* 514 U.S. 1115 (1995).

A procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263. When the last reasoned state court decision rests both on a procedural default and an alternative ruling on the merits, the claim is barred from federal habeas review. *Coleman,* 501 U.S. at 729; *Harris,* 489 U.S. at 264 n.10; *McBee v. Abramajtys,* 929 F.2d 264, 267 (6th Cir. 1991); *McBee,* 763 F.2d at 813. In cases where the last state court to render a reasoned opinion on the claim explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

Petitioner presented his ineffective assistance of appellate counsel claim in his

application for reopening pursuant to Rule 26 (B) of the Ohio Rules of Appellate Procedure.[2]  (Doc. 10, Ex. 16). The Ohio Court of Appeals denied the application because petitioner had failed to show good cause for his untimely filing.  (Doc. 10, Ex. 18).  The Ohio Court of Appeals, was the last court to render a reasoned opinion on petitioner's claim.  The Ohio Supreme Court's later unexplained decision summarily dismissing the appeal "as not involving any substantial constitutional question" must be presumed to rely on the same procedural default.  *Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Levine v. Torvik,* 986 F.2d 1506, 1517 n.8 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), and *overruled in part on other grounds by Thompson v. Keohane,* 516 U.S. 99 (1995), and *Ylst,* 501 U.S. at 803-04), *cert. denied,* 531 U.S. 1089 (2001).

The state law ground relied on by the Ohio courts in rejecting petitioner's claims, the "good cause" requirement in Rule 26(B), was adequate.  In 2001, at the time of petitioner's proceedings to reopen his appeal, it was a well-established, regularly followed practice in Ohio for the courts to foreclose review of untimely ineffective assistance of appellate counsel claims brought in an application to reopen the appeal based on the lack of good cause. *Monzo v. Edwards,* 281 F.3d 568, 577-578 (6th Cir. 2002); *see Knuckles v. Brigano,* 70 Fed.Appx. 830, 841, 2003 WL 21771949, at **11 (6th Cir. July 22, 2003), *petition for cert. filed* (U.S. Sept. 25, 2003) (No. 03-6884); *Lewis v. Randle,* 36 Fed.Appx. 817, 819, 2002 WL 847985, at **2 (6th Cir. April 30, 2002), *cert. denied,* 537 U.S. 1137 (2003).

---

[2]Ohio R. App. P. 26 (B)(1) provides:

> A defendant in a criminal case may apply for reopening of the appeal  from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel.  An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

Appellate rule 26 (B), which took effect on July 31, 1993, codified the decision of the Ohio Supreme Court in *State v. Murnahan,* 584 N.E.2d 1204 (Ohio 1992).  *State v. Reddick,* 647 N.E.2d 784, 786 (Ohio 1995).  In *Murnahan,* the Ohio Supreme Court held that a person claiming ineffective assistance of appellate counsel could present his claims under Ohio R. App. P. 26 and 14(B).  App. R. 26 provided for a motion for reconsideration before the judgment was filed with the clerk for jounalization or within ten days after announcement of the court's decision. App. R. 14(B) provided for an enlargement of time "for good cause shown." *See Reddick,* 647 N.E.2d at 786.

Citing Magistrate Judge Michael R. Merz's ruling in *Landrum v. Anderson,* No. C-1-96-641, Supplemental Memorandum on Petitioner's Motion for Reconsideration, (S.D. Ohio Feb. 28, 2002) ("*Landrum*") and the Ohio cases cited therein, petitioner argues that the good cause requirement is not regularly enforced by the Ohio Supreme Court. (Doc. 13 at 7-9). In the *Landrum* case*,* Judge Merz was careful to point out that this was true only with respect to the Ohio Supreme Court's handling of capital cases. (*Landrum,* p. 2). Judge Merz explained that "[s]o far as this Court has been able to observe, the Ohio courts are now uniformly following App. R. 26(B) and applying it in a consistent manner, except for the Ohio Supreme Court in capital cases in the last year." (*Id.*). He added that even in all capital cases the Ohio Court of Appeals are enforcing the 26(B) timeliness requirement, but that the Ohio Supreme Court is not affirming on that basis. (*Id.*). In his decision, Judge Merz refers to the "steady development of state policy" in "applying Rule 26(B) to non-capital cases." (*Id.* at 3). The conclusion in *Landrum* that the timeliness requirement of Ohio App. R. 26(B) is not firmly established and regularly followed is limited to capital cases. With respect to non-capital cases, such as petitioner's, *Landrum* observes that Ohio App. R. 26(B) is uniformly enforced. *Cf. Scott,* 209 F.3d at 868 (Ohio Supreme Court's relaxation of enforcement of default in some capital cases indicates court's exercise of abundance of caution, not lack of uniform application of procedural rules).

Accordingly, petitioner's claim for relief is barred from review by this Court absent a showing of cause and prejudice, or that a fundamental miscarriage of justice will result if the claim is not considered. As cause, petitioner argues that his attorney on direct appeal, Ms. Randman, failed to file a timely application for reopening under Ohio App. R. 26(B) asserting her own ineffectiveness and also failed to inform him of the additional issues which should have been raised on appeal and the Rule 26(B) procedure for alerting the Ohio courts to these issues after his appeal. Petitioner also advances as cause his ignorance of the legal procedure pursuant to Rule 26(B) and of the legal issues underlying the application, and that petitioner was without counsel once the Ohio Supreme Court affirmed his conviction on direct review. (Doc. 13 at 9-13).

The Ohio Court of Appeals explained its denial of petitioner's application to reopen the appeal based on ineffective assistance of appellate counsel, as follows:

App.R. 26(B) requires an application to reopen an appeal to be filed with the court of appeals within ninety days from the date on which the appellate judgment was journalized, unless the applicant can show good

14

cause for filing at a later time. This court's judgment was journalized on December 22, 1999, and the appellant filed his application to reopen his appeal on June 22, 2001; therefore, the appellant filed his application fifteen months after the ninety-day period had expired.

The appellant initially argues that this delay was justified, because the Ohio Supreme Court did not act to disallow his appeal until almost a month after the ninety-day filing period had expired. However, after an appellant has perfected his appeal from the court of appeals to the supreme court, the court of appeals retains jurisdiction to rule upon a timely filed App.R. 26(B) application. See S.Ct.Prac.R. II(2)(D)(1). Therefore the pendency of the appellant's appeal from this court to the supreme court did not preclude the appellant from filing, and thus cannot be said to constitute good cause for his delay in filing, his application to reopen his appeal.

The appellant further contends that the filing delay was excused, because the same counsel had represented him on appeal to this court and to the Ohio Supreme Court. Although counsel is not expected to argue his own ineffectiveness, such cause will excuse a filing delay "only while [the cause] exists, not for an indefinite period." The fact that the same counsel represented the appellant on appeal to this court and to the supreme court does not provide good cause for a filing delay of more than a year after the supreme court disallowed the appellant's appeal.

Finally, the appellant asserts that the filing delay was justified, because he was unversed in the law, was without legal counsel from the date that the supreme court disallowed his appeal until he retained his present counsel, and was unaware of the deficiencies in appellant counsel's representation until present counsel so advised him in April 2001. The appellant had no right to counsel to assist him in filing his application and ignorance of the law does not constitute good cause for a filing delay.

(Doc. 10, Ex. 18) [citations omitted].

To establish cause to excuse a procedural default, petitioner must show that "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Carrier,* 477 U.S. at 488. Ineffective assistance of appellate counsel may constitute cause for a procedural default. *Id.* To demonstrate that counsel's

15

performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the context of a direct appeal of a defendant's conviction or sentence, a lawyer's disregard of an instruction to file a notice of appeal would constitute deficient performance. *Roe v. Flores-Ortega*, 528 U.S. 470, 477-478 (2000). Where defendant has not instructed his counsel as to whether or not to pursue a direct appeal, counsel has a constitutional duty to consult with his client concerning an appeal "when there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe*, 528 U.S. at 479; *Cross v. United States,* 73 Fed.Appx. 864, 865, 2003 WL 22089345, at **1 (6th Cir. Sept. 8, 2003); *Spence v. United States,* 68 Fed.Appx. 669, 670, 2003 WL 21500010, at **1 (6th Cir. June 26, 2003).

In *White v. Schotten,* 201 F.3d 743 (6th Cir.), *cert. denied* 531 U.S. 940 (2000), petitioner obtained representation from the public defender's office after the Ohio Court of Appeals affirmed most of his convictions. 201 F.3d at 748. The Sixth Circuit determined that the failure of the public defender's office to file a timely application for reopening his appeal due to its three year backlog constituted "external cause" sufficient to excuse a procedural default based on an untimely Rule 26(B) filing. 201 F.3d at 752. Underlying this holding was the court's conclusion that the Rule 26(B) proceeding was part of the direct review process for which counsel was constitutionally guaranteed and required to render effective assistance, 201 F.3d at 752-753, a conclusion with which the Ohio Courts of Appeal strongly disagree, *see Lambert v. Warden, Ross Correctional,* No. 01-3422, 2003 WL 22071466, at *4, *7 (6th Cir. Sept. 2, 2003) and cases cited therein.

Petitioner relies on the *Schotten* case to support his argument that his appellate counsel's failure to file his application for reopening within the ninety day filing period constitutes cause to excuse his procedural default. (Doc. 13 at 9-10). In the instant case, the Ohio Court of Appeals ruled that Ms. Randman was not expected to argue her own ineffectiveness and as such, petitioner's delay in filing while she was representing him was in fact excused. Accordingly, the procedural default was not based on the period of time before the Ohio Supreme Court declined to hear petitioner's direct appeal, but rather, as the Ohio Court of Appeals explained, on the "filing delay of more than a year after the supreme court disallowed the appellant's appeal." (Doc. 10, Ex. 18 at 2). At that point, by petitioner's own admission, Ms. Randman was not representing him. (Doc.

16

13 at 7).  She therefore can not be considered deficient for failing to file an application at that point in time.

Petitioner cites *Paris v. Turner,* No. 97-4129, 1999 WL 357815 (6th Cir. May 26, 1999), *cert. denied,* 529 U.S. 1104 (2000) to support his argument that appellate counsel's failure to inform petitioner of the Ohio App. R. 26(B) procedure and the issues she omitted from petitioner's direct appeal amounted to constitutionally ineffective assistance of counsel sufficient to establish cause. (Doc. 13 at 12).  In the *Paris* case, petitioner's appellate attorney failed to develop the legal issues in his appeal, failed to advise him of the results of his appeal for four months, and failed to inform him of how to proceed on further appeals. 1999 WL 357815, at **2-3.  The federal court concluded that "[b]ecause of this, we do not think that it can fairly be said that Paris truly had his first appeal as of right."  1999 WL 357815, at **3.   When petitioner Paris learned of his unsuccessful appeal, he contacted the public defender's office which placed him on a waiting list for three years and failed to file a timely Rule 26(B) application. *Id.* at **2. The federal court concluded that "it would be unjust to blame a layman . . . for the backload at the Ohio Public Defender's Office." *Id.* at **3. The Sixth Circuit found that the incompetence of his appellate counsel combined with the backlog at the Ohio Public Defender's office served as cause to excuse his untimely motion to reopen his appeal.  All of these factors were not present in the instant case.  In this case, petitioner had a true first appeal as of right, there was no claim of any delay by counsel in informing petitioner of the results and counsel included in the appeal the arguments most likely to prevail, as was her job, as opposed to every nonfrivolous issue.  *See Smith v. Murray,* 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745, 750-54 (1983).  Moreover, since petitioner in the instant case did not secure further representation after the completion of his appeal, the delay cannot be attributed to any deficiencies of other counsel, such as the public defender's office.  Accordingly, there are significantly more facts in *Paris* which favor a finding of cause, than in the instant case.

Petitioner has not cited any other authority to support his argument that the failure of appellate counsel to inform petitioner of the Rule 26(B) proceeding to assert ineffective assistance of appellate counsel claims constitutes constitutionally ineffective assistance sufficient to satisfy the cause requirement. Indeed, it would appear to this Court that if  such an obligation exists, it would only apply if petitioner expressed a desire to further pursue his legal remedies or if counsel had reason to believe that a

rational defendant would want to pursue a Rule 26(B) remedy.[3] *Cf. Roe*, 528 U.S. at 479; *Cross,* 73 Fed.Appx. at 865, 2003 WL 22089345, at **1; *Spence,* 68 Fed.Appx. at 670, 2003 WL 21500010, at **1; *but cf. United States ex rel. Delgado v. Gramley,* No. 94 C 2190, 1994 WL 604255 at *4 (N.D. Ill. Nov. 3, 1994).   There is no evidence of that in this case. Since Paris contacted the public defender's office immediately after his direct appeal, as did White, it was evident that these two petitioners desired to take further legal action, but were prevented from doing so because of the backlog in the public defender's office.   In this case, petitioner waited an entire year after the Ohio Supreme Court ruling on direct appeal before contacting an attorney to review his case. (*See* Doc. 13 at 11). Petitioner did not require specific knowledge of his legal claims or of the specific procedure for reopening his appeal in order to pursue further appeals.  He merely had to contact an attorney and express an interest in pursuing any remedies available to him. Although he ultimately took that action, he did so a year too late.

 Finally, ignorance of the law is also not sufficient to establish cause.  *See McCleskey v. Zant,* 499 U.S. 467, 502 (1991); *Rodriguez v. Maynard,* 948 F.2d 684, 688 (10th Cir. 1991) (and cases cited therein); *see also Hall v. United States,* 41 Fed. Appx. 743, 744, 2002 WL 1378222, at **1 (6th Cir.  June 24, 2002), *cert. denied,* 72 USLW 3241 (U.S. Oct. 6, 2003) (No. 03-5058).

 Petitioner's arguments do not support a finding of cause for the procedural default of his ineffective assistance of appellate counsel claim. Since the record does not support a finding that this is an extraordinary case in which a constitutional violation has probably resulted in the conviction of one who is actually innocent of the crime for which he was convicted, *see Murray,* 477 U.S. at 496,  petitioner has not demonstrated that failure to address the ineffective assistance of appellate counsel claim will result in a fundamental miscarriage of justice.

 Accordingly,  petitioner has waived his ineffective assistance of appellate counsel claim asserted in his second ground for relief and this Court is precluded from considering the claim.

---

[3]Although the Sixth Circuit has construed the Rule 26(B) proceeding as part of the direct review process, a construction which remains controversial, *see Lambert*, 2003 WL 22071466, it is unclear whether the *Roe* standard applies in this instance.

### III.  Petitioner has waived grounds three through seven due to a procedural default in state court.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A habeas corpus petitioner must present both the factual and legal underpinnings of his claim to the state courts for the claim to be deemed "fairly presented." *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987).  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v.  Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present his claims through to the state's highest court or commits some other procedural default relied on to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the petition is subject to dismissal with prejudice on the ground that petitioner has waived his claims for habeas corpus relief.  *See O'Sullivan,* 526 U.S. at 847-848; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).  If, because of a procedural default, petitioner has not had his claims considered by the state's highest court and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977). "[W]here a constitutional violation has probably resulted in the conviction of one who is actually innocent," the miscarriage of justice standard has been met.  *Murray,* 477 U.S. at 496.

In this case, petitioner failed to present his claims, asserted as grounds three through seven, on his direct appeal.  Petitioner has waived these claims for purposes of

federal habeas corpus review because he did not provide the highest state court in Ohio with an opportunity to correct the alleged constitutional errors. *See Leroy,* 757 F.2d at 99; *see also Hughes v. Idaho State Bd. of Corrections,* 800 F.2d 905, 907-08 (9th Cir. 1986).

This Court may not consider petitioner's claims unless he shows cause for the default and actual prejudice as a result of the alleged errors, or demonstrates that failure to consider the claims will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87. As cause, petitioner argues that his counsel was constitutionally ineffective in failing to present the issues asserted as grounds three through seven in his direct appeal.

An ineffective assistance of appellate counsel claim asserted as cause for a procedural default can itself be procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 452 (2000). Petitioner must demonstrate cause and prejudice to excuse his procedural default with respect to his ineffective assistance of appellate counsel claim or that a miscarriage of justice will result from the failure to consider that claim to enable this court to consider ineffective assistance of appellate counsel as cause for the procedural default of his third through seventh grounds for relief. *See Edwards v. Carpenter,* 529 U.S. at 453. As indicated in Section II, above, petitioner has procedurally defaulted his ineffective assistance of appellate counsel claim and has failed to demonstrate cause or that a miscarriage of justice will result from failure to consider that claim because he is actually innocent.

Accordingly, petitioner has waived his ineffective assistance of appellate counsel claim as cause for the procedural default of his third through seventh grounds for relief and this Court is precluded from considering the claim as cause. Petitioner has also failed to demonstrate that failure to consider the claims asserted as grounds three through seven will result in a fundamental miscarriage of justice because he is actually innocent. This Court, therefore, is precluded from reviewing the merits of petitioner's third through seventh grounds for relief.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2.    A certificate of appealability should issue with respect to the dismissal on procedural grounds of petitioner's claims for relief alleged in the petition as grounds two through seven because "jurists of reason would find it debatable whether this Court is correct in its procedural rulings" that these claims have been waived and  jurists of reason would find it debatable whether the second through seventh claims in the petition state viable constitutional claims. *See Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000). A certificate of appealability should not issue with respect to the dismissal on the merits of petitioner's claim for relief alleged in the petition as ground one because, for the foregoing reasons, petitioner has failed to make a substantial showing of the denial of a constitutional right that is remediable in this proceeding.  See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Petitioner has not shown that reasonable jurists could debate whether the claim alleged as ground one in the petition should have been resolved in a different manner or that the issue presented was "adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell,* 123 S.Ct. 1029, 1034, 1039-40 (2003) (quoting *Slack,* 529 U.S. at 483-84) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

3.    With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and therefore GRANT petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  _____        S/Susan M. Novotny                                 
  hr                          Susan M. Novotny
                              United States Magistrate Judge

P:\JS\Law Clerk filings\01-218id&IAACwaiver.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Larry Edwards,
     Petitioner


    vs                               Case No. C-1-01-218
                                        (Beckwith, J.; Novotny, M.J.)

Anthony Brigano,
     Respondent

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Susan M. Novotny, United States Magistrate Judge, in the above-entitled habeas corpus action brought under 28 U.S.C. § 2254.  Any party may object to the Magistrate Judge's Report and Recommendation within **fifteen (15) days** after the date the Report and Recommendation is stamped as "filed" by the Clerk of Court.  Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s)   Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).